1

2

3

4

5

6

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

7

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | No. CR 06-019-TUC-DCB (JM) |
| | ) | |
| vs. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Jesus Jose Ortiz, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

8

9

10

11

12

13      By Superseding Indictment [Docket No. 32] filed December 13, 2006, Defendant was

14   charged with one count of illegal re-entry into the United States after having been removed

15   pursuant to 8 U.S.C. § 1326(a), enhanced pursuant to § 1326(b)(2); with one count of fraud

16   and misuse of documents pursuant to 18 U.S.C. § 1546(a); and one count of falsely claiming

17   United States citizenship pursuant to 18 U.S.C. § 911.  Defendant filed three motions to

18   dismiss.   The first [Docket No. 28], in which Defendant asserted that count one of the

19   indictment must be dismissed because the Government failed to allege the elements of an

20   offense under section 1326(b)(2), was denied as moot in a previous order. *Docket No. 45*.

21   In the second [Docket No. 29], Defendant requests that the enhancement of count one be

22   dismissed based on alleged procedural defects  underlying his order of removal.  In the third

23   [Docket No. 43], he seeks dismissal of count two (misuse of documents) because his use of

24   a driver's license to attempt to gain entry does not violate 18 U.S.C. § 1546(a), and the

25   dismissal of count three (false claim of U.S. citizenship) because he did not claim to be a

26   citizen. The second and third motions to dismiss are addressed herein, and it is recommended

27   that the District Court, after its independent review, deny Defendant's Motion to Dismiss

28

1  Enhancement, and deny in part and grant in part Defendant's Motion to Dismiss Counts 2 and

2  3.

3  **I.    PROCEDURAL HISTORY**

4        Pursuant to the Minute Entry filed December 14, 2005, this matter was referred to

5  Magistrate Judge Marshall for pre-trial proceedings.   Defendant's motions to dismiss came

6  on for hearing before Magistrate Judge Marshall on March 13, 2007.  Defendant was present

7  and assisted by counsel.  Government's counsel was present.  No testimony was presented by

8  either party.  After inquiry by the court, the parties agreed to submit supplemental briefing on

9  the Motion to Dismiss Enhancement, and particularly addressing Defendant's collateral attack

10  on his previous removal.  The supplemental briefing has been filed and this matter is now

11  fully briefed.

12  **II.    FACTUAL BACKGROUND**

13        Defendant is a native and citizen of Mexico.  *Exhibit A* (Transcript of Removal

14  Proceedings), p. 6.[1]  The Government alleges that Defendant was convicted of Carrying a

15  Concealed Weapon on December 16, 1988 and sentenced to one hundred and eighty days in

16  jail followed by three years probation. *Government's Response to Defendant's Motion to*

17  *Dismiss Enhancement*, p. 1.  Defendant was convicted of Possession of Marijuana for Sale

18  on April 23, 1995 and sentenced to eighteen months in prison.  *Id.*  On August 18, 1997,

19  Defendant was ordered removed from the United States based upon a conviction for a drug

20  offense. *Exhibit A*, pp. 5-6; *Exhibit C* (Order of Immigration Judge).

21        Defendant reentered the United States in 1998 and his order of removal was reinstated

22  by immigration officials on October 2, 2001. *Exhibit D.*  This occurred after he was convicted

23  of Transportation of Marijuana for Sale on October 1, 2001, and sentenced to four years

24  probation. *Government's Response to Defendant's Motion to Dismiss Enhancement*, pp. 1-2.

25

26        [1]Unless otherwise noted, the referenced exhibits are attached to the Government's

27  Supplemental Exhibit List filed on March 15, 2007, and found at Docket Number 54.

28                                                    2

1    Defendant was subsequently arrested for Misconduct Involving a Weapon, involving

2  the discharge of a firearm at a structure, on April 22, 2002. *Government's Response to*

3  *Defendant's Motion to Dismiss Enhancement*, p. 2. Defendant was then convicted of

4  Misconduct Involving a Weapon and sentenced to two and one-half years in prison, on

5  October 25, 2002. *Id.* On that same date, Defendant's probation for Transporting Marijuana

6  for Sale was revoked and he was sentenced to three and one-half years in prison, which ran

7  concurrently with the sentence imposed for the weapons conviction. *Id.* Subsequent orders

8  reinstating the prior removal order were issued on January 27, 2003, *Exhibit E*, and September

9  17, 2004, *Exhibit F*, p. 3.

10    The original August 18, 1997, order of removal came after a group removal hearing

11  conducted by Immigration Judge Scott Jeffries in Florence Arizona. *Exhibit B.* Defendant

12  was individually called by the IJ and elected to have the proceeding conducted in English.

13  *Id.*, p. 5. He indicated that he understood the rights that had been explained to the group,

14  including the right to retain an attorney, and waived those rights. *Id.* The IJ then explained

15  that immigration officials asserted that Defendant should be removed from the United States

16  because he had been "convicted of a drug offense." *Id.* Defendant admitted that he was

17  convicted on August 7, 1995, in Coconino County, Arizona, "for possession of at least one

18  count [sic] or more of marijuana." *Id.*, p. 6. Based on this admission, Defendant was ordered

19  removed. *Id.*, pp. 6-7. The IJ next informed Defendant that he might be "eligible for a form

20  of relief called Cancellation of Removal," and asked him if he wished to apply for relief. *Id.*,

21  p. 7. Defendant responded that he did not wish to apply and wanted to return to Mexico. *Id.*

22  The IJ then explained that if he did not apply for cancellation, he would not be able to do so

23  in the future. *Id.* Defendant stated he understood and again declined to apply for cancellation.

24  *Id.* He then accepted the IJ's decision and indicated he did not wish to appeal. *Id.*

25    On December 11, 2005, Defendant sought admission into the United States from

26  Mexico through Nogales, Arizona. *Exhibit F.* The Government alleges that Defendant

27

28                                              3

1   claimed to be a United States citizen when asked about his citizenship and presented an

2   Arizona driver's license issued in the name Mike M. Mascokro, but bearing Defendant's

3   likeness.   *Government's Response to Defendant's Motion to Dismiss Enhancement*, p. 2.

4   Upon receiving the driver's license from Defendant, Customs and Border Protection Officer

5   B. Tipling suspected that Defendant was falsely claiming to be a United States citizen and

6   referred him to secondary inspection for further questioning.  *Id.*, pp. 2-3.  Defendant was

7   advised of his rights, which he acknowledged and waived.  *Exhibit F*, p. 1.  Defendant

8   admitted that his true identity is Jesus Jose Ortiz, a Mexican national born in Navajoa, Sonora,

9   Mexico, and that he had no permission to enter or remain in the United States.  *Id.*, pp. 2-3.

10   **III.      ANALYSIS**

11   **A.      Motion to Dismiss Enhancement [Docket No. 29]**

12        Defendant is charged with illegal re-entry into the United States after having been

13   removed.  Because the underlying removal order serves as a predicate element of an illegal

14   re-entry offense under 8 U.S.C. § 1326, a defendant charged under the statute may collaterally

15   attack the removal order under the Due Process Clause. *United States v. Mendoza-Lopez*, 481

16   U.S. 828, 837-38 (1987).  A defendant's prior deportation may not be used to establish an

17   element of the crime of re-entry after deportation if (1) the deportation proceeding violated

18   due process and (2) he suffered prejudice as a result. *United States v. Lopez-Vasquez*, 1 F.3d

19   751, 753-55 (9th Cir. 1993).

20        In his original motion, Defendant simultaneously recognizes that he must establish a

21   due process violation and sidesteps doing so and proceeds to argue the merits of the challenge

22   that he could have mounted to the 1997 removal.  Subsequently, in the supplemental briefing

23   ordered by the Court, Defendant attacks the 1997 removal because he was addressed as part

24   of a group and that his waiver of appeal before the immigration judge was not knowing and

25   intelligent citing *Mendoza-Lopez*, 481 U.S. 828 (1987).  *Defendant's Hearing Memorandum*

26   *to the Court Re: 1997 Immigration Removal Hearing*, Docket No. 56.

27

28                                                    4

1    Due process is violated if the defendant's waiver of appeal at the deportation hearing

2 was not "considered and intelligent." *Lopez-Vasquez*, 1 F.3d at 753-54; *see also United States*

3 *v. Ahumada-Aguilar*, 295 F.3d 943, 950 (9th Cir. 2002) (using the phrase "knowing and

4 intelligent").  The government has the burden to prove a valid waiver by clear and convincing

5 evidence. *United States v. Pallares-Galan*, 359 F.3d 1088, 1097 (9th Cir. 2004).  The court

6 should "indulge every reasonable presumption against waiver."  1 F.3d at 753.

7    In this case, Defendant's waiver of appeal was considered and intelligent.  The Ninth

8 Circuit has held that informing and explaining the right to appeal to deportees as a group,

9 without asking each deportee individually if he wants to appeal, is not sufficient to satisfy due

10 process. *See United States v. Zarate-Martinez,* 133 F.3d 1194, 1197-98 (9th Cir. 1998).  The

11 circuit court has also held that a mass silent waiver of the right to appeal a deportation order

12 to the BIA did not satisfy due process. *See Lopez-Vasquez,* 1 F.3d at 754.  However,

13 Defendant's case is readily distinguishable from these authorities and the IJ clearly satisfied

14 due process at his removal hearing.  In fact, this case is most like *United States v. Estrada-*

15 *Torres*, 179 F.3d 776 (9th Cir. 1999), where the appeals court addressed a situation where the

16 IJ first explained the right to appeal to the potential deportees as a group, then he also

17 individually asked the defendant if he wished to accept his decision or to appeal. *Id.* at 781.

18 On these facts, the Ninth Circuit concluded that

19          [b]ecause the immigration judge explained the right to appeal to
           [the defendant] (with the other deportees) and individually asked
20          him specifically if he wanted to appeal his deportation order, his
           waiver of his right to appeal was "considered and intelligent."
21 *Id.*

22    The facts of *Estrada-Torres* read as if they were written for the instant case.  Here, the

23 IJ addressed Defendant in a group and stated that:

24          [a]t the end of the hearing, I am going to make a decision.
           If you disagree with my decision, you can appeal your case to a
25          higher court.

26

27

28                                              5

1
2
> Each of you should have received a sheet of paper that explains in detail your appeal rights.  Did you get this paper?

3
> *          *          *

4
5
> You didn't get the paper?  If you didn't get it, raise your hand and the officer will give you one now.

6
7
> Gentlemen, if you disagree with my decision after I make it and you want to appeal, all you need to do is say "I appeal."  Then I will give you the necessary forms to file with the appellate court.

8
9
> If you don't want to appeal your case, you can accept my decision.  If you accept my decision, then my decision is final.  Do you understand your right to appeal?

10 *Exhibit A*, pp. 3-4.   The transcript further reflects that all in the group indicated they

11 understood the IJ's explanation of their appeal rights.  *Id.*, p. 4.

12      Later, the IJ addressed Defendant individually.  After asking if he understood the rights

13 the IJ had explained to him, Defendant responded affirmatively and indicated that he did not

14 wish to first speak with an attorney.  *Id.*, p. 5.  The IJ proceeded to question Defendant and,

15 based on Defendant's responses, ordered him removed.  *Id.*  The IJ then informed Defendant

16 as follows:

17
18
> Sir, you may be eligible for a form of relief called Cancellation of Removal.  You have had your green card for more than seven years.

19
20
> Do you want to apply for Cancellation of Removal to try and stay in the United States or do you want to go back to Mexico?

21 *Id.*, p. 7.  After Defendant responded that he wished to return to Mexico, the IJ asked if he

22 understood that if he did not then apply for Cancellation of Removal, he would not be able

23 to do so in the future.  *Id.*  Defendant stated that he understood, but he did not wish to apply.

24 *Id.*  The IJ then ordered Defendant's removal and individually asked if he wanted to accept

25 the decision to appeal the decision.  Defendant said, "No.  I accept it." *Id.*

26
27
28

6

1   This colloquy clearly satisfied the requirements for a knowing and intelligent waiver

2   and Defendant's due process rights were not violated.  *United States v. Estrada-Torres*, 179

3   F.3d 776, 780-81 (9th Cir. 1999), *rev'd on other grounds, United States v. Rivera-Sanchez*, 247

4   F.3d 905 (9th Cir. 2001).  Accordingly, the Court need not address the prejudice requirement

5   and recommends that this motion be denied.

6   **B.      Motion to Dismiss Counts Two and Three [Docket No. 43]**

7   **1.      Count Two**

8   In Count Two of the Superseding Indictment, Defendant is charged with violating18

9   U.S.C. § 1546(a) which provides penalties when someone:

10          knowingly forges, counterfeits, alters, or falsely makes any
           immigrant or nonimmigrant visa, permit, border crossing card,
11          alien registration receipt card, or other document prescribed by
           statute or regulation for entry into or as evidence of authorized
12          stay or employment in the United States . . .

13  The Government specifically alleges that Defendant violated this section by possessing

14  and attempting to use

15          an Arizona driver's license issued in the name of Mike N.
           Mascokro bearing the defendant's likeness, which the defendant
16          knew was procured by fraud and unlawfully obtained, and the
           defendant presented the Arizona driver's license to immigration
17          officials at the Nogales Port of Entry as proof that he had lawful
           authority to legally enter into the United States from Mexico . .
18          . .

19  *Superseding Indictment*, p. 2.

20          Before 1986, section 1546(a) proscribed possession of any visa, permit or other

21  document "required" for entry into the United States.  In 1986, Congress amended the section

22  by deleting the word "required" and adding the words, "prescribed by statute or regulation"

23  for the entry into or evidence of authorization to be in the United States.  18 U.S.C. § 1546(a).

24  The Government argues that an Arizona driver's license satisfies this requirement because it

25  is issued pursuant to Arizona statutes (which require legal residency) and because American

26  citizens crossing from Mexico into Arizona "are most often required to show only a primary

27

28                                              7

1  form of identity, which is most commonly their U.S. state issued driver's license." *Response*

2  *to Motion to Dismiss Counts 2 & 3*, pp. 3-4.

3        The Court cannot accept the Government's position.  Under A.R.S. § 28-3153(D), the

4  State of Arizona will not issue a driver's license

5              for a person who does not submit proof satisfactory to the
6              department that the applicant's presence in the United States is
               authorized under federal law.  For an application for a driver's
7              license . . . the department shall not accept as a primary source of
               identification a driver license issued by a state if the state does
8              not require that a driver licensed in that state be lawfully present
               in the United States under federal law . . .

9        The Government relies on this subsection to establish that an Arizona driver's license

10  is a "document prescribed by statute or regulation for entry into or as evidence of authorized

11  stay or employment in the United States." *Response to Motion to Dismiss Counts 2 & 3*, p. 3.

12  The statute simply does *not* do that.  What the Arizona statute does is require authorized

13  presence before a license will be issued.  However, nowhere in the statute is it indicated that

14  the license, once obtained, will constitute a basis for entry into or authorization to stay in the

15  United States.

16        Further bolstering this conclusion are the types of documents identified in section

17  1546(a).  Examples of documents that section 1546(a) is intended to address are immigrant

18  or nonimmigrant visas, permits, border crossing cards, and alien registration receipt cards.

19  18 U.S.C. §1546(a).  These documents are issued by the United States and not by individual

20  states.  The Court finds this good evidence of the type of federal immigration documents that

21  the statute is intended to encompass.

22        Also influential is 8 U.S.C. § 1181, entitled "Admission of Immigrants into the United

23  States, which lists the "documents required" of an immigrant and generally requires that the

24  immigrant present a valid unexpired immigrant visa and a valid unexpired passport or other

25  suitable travel document.  The statute does not identify a driver's license as one of these

26  documents.

27

28                                                        8

1    Based on these considerations, the Court finds that an Arizona driver's license does not
2  fall within the group of immigration documents the fraudulent use of which would support
3  charges under 18 U.S.C. § 1546(a).  Dismissal of this count is therefore recommended.

4         **2.    Count Three**

5    In Count Three of the Superseding Indictment, Defendant is alleged to have violated
6  18 U.S.C. § 911 when he "did falsely and willfully represent himself to be a citizen of the
7  United States of America, which statement was false as the defendant well knew, with said
8  statement being made to immigration officials of the Nogales Port of Entry . . . ." *Superseding*
9  *Indictment*, p. 3.  To obtain a conviction under section 911, the Government must establish
10  the following elements beyond a reasonable doubt: (1) the defendant made a false claim of
11  United States citizenship; (2) the misrepresentation was willful (i.e. voluntary and deliberate);
12  and (3) it was conveyed to someone with a good reason to inquire into his citizenship status.
13  *United States v. Karaouni*, 379 F.3d 1139, 1142 (9th Cir. 2004) (citations omitted).

14    Here, Defendant contends the Government cannot meet its burden because his
15  conversation with border officials was not recorded and because the conversation was largely
16  inaudible in the busy Nogales Port of Entry.  These circumstances, Defendant asserts, force
17  him into the impossible position of proving that he did not say he was a United States citizen.
18  As the Government responds, however, it will have to prove beyond a reasonable doubt that
19  Defendant made such an assertion.  Depending on what it might reflect, a recording would go
20  a long way toward proving whether Defendant claimed citizenship.  However, without such
21  a recording, this case is not unlike most others where witnesses are examined and cross-
22  examined and it is left to the judge or jury to determine credibility.  As such, it is
23  recommended that this count not be dismissed.

24

25

26

27

28                                              9

**IV.    RECOMMENDATION FOR DISPOSITION BY THE DISTRICT JUDGE**

Based on the foregoing, and pursuant to 28 U.S.C. § 636(b) and Local Rule 1.17(d)(2), Rules of Practice of the United States District Court, District of Arizona,

THE MAGISTRATE JUDGE RECOMMENDS that the District Court, after an independent review of the record, **deny** Defendant's Motion to Dismiss Enhancement [Docket No. 29];

THE MAGISTRATE JUDGE FURTHER RECOMMENDS that the District Court **deny in part and grant in part** Defendant's Motion to Dismiss counts 2 and 3 of the Indictment [Docket No. 43] and **dismiss** Count Two of the Superseding Indictment.

Pursuant to 28 U.S.C. § 636(b), any party may serve and file written objections with the District Court within ten days of being served with a copy of this Report and Recommendation.  If the objections are not timely filed they may be deemed waived. If any objections are filed, this action should use case number: **CR 06-0019-TUC-DCB**.

DATED this 12th day of April, 2007.

Jacqueline Marshall
United States Magistrate Judge